PAUL R. BARTLESON #119273
LAW OFFICES OF PAUL R. BARTLESON
1007 7th Street, Suite 214
Sacramento, CA 95814
Ph. # (916) 447-6640
Fax # (916) 447-7840
paulbartlesonlaw@comcast.net

Attorney for Plaintiff
DANIEL JURIN

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

-o0o-

| | |
|---|---|
| DANIEL JURIN, an Individual, | CASE NO. 09-1695 [Temporary] |
| Plaintiff, | PLAINTIFF'S COMPLAINT FOR |
| vs. | (1) VIOLATION OF 15 USC § 1114(1)<br>(2) VIOLATION OF 15 USC § 1125 (a) |
| GOOGLE, INC. | (3) VIOLATION OF 15 USC § 1125 ©<br>(4) COMMON LAW TRADEMARK |
| Defendant. | INFRINGEMENT<br>(5) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; |
| | (6) NEGLIGENT INTERFERENCE WITH EXISTING ECONOMIC RELATIONS; |
| | (7) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; |
| | (8) FRAUD AND DECEIT;<br>(9) CONVERSION<br>(10) CALIFORNIA UNFAIR COMPETITION AND<br>(11) UNJUST ENRICHMENT<br>General and Punitive Damages;<br>Demand for Jury Trial |
| _____/ | |

Plaintiff DANIEL JURIN (hereinafter "Plaintiff" or "JURIN"), hereby alleges as follows:

**JURISDICTION AND VENUE**

1.       This action arises under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15

-1-

1  U.S.C. 1051 et seq., and California law.

2  2.     This Court has federal question jurisdiction under 28 U.S.C. 1331 and 1338 (a) and (b), and

3  1121(a). This Court also has supplemental jurisdiction over the California statutory and common law

4  claims pursuant to 28 U.S.C. 1367(a) because the state law claims are so related to the federal

5  trademark claims that they form part of the same case or controversy.

6  3.     Venue in this judicial district is proper under 28 U.S.C. 1391 (b) & © and 1400(a) in that this

7  is the judicial district in which a substantial part of the acts and omissions giving rise to the claims

8  occurred.

9  **PARTIES**

10  4.     Plaintiff DANIEL JURIN ("JURIN") is an individual residing and doing business in the

11  County of Sacramento, State of California.

12  5.     Upon information and belief, defendant GOOGLE, Inc. (hereafter, "GOOGLE") is a

13  corporation organized under the laws of the State of Delaware with its corporate offices located at

14  1600 Amphitheatre Parkway, Mountainview, California 94043.   GOOGLE is an international

15  business doing business in every country and place in the world where there is an internet

16  connection.  It is the leading "search engine" on the internet and holds a 70% share of the market for

17  search traffic.

18  6.     Plaintiff is informed and believes, and thereon alleges,  that at all times relevant hereto each

19  of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or

20  employee of the remaining Defendants and was at all times  acting within the scope of such agency,

21  affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently

22  ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all

23  the facts and circumstances, including, but not limited to, full knowledge of each and every violation

24  of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

25  **INTRODUCTION**

26  7.     Through this action, JURIN seeks to address and remedy GOOGLE's unauthorized use and

27  exploitation of the trademarks owned by Plaintiff, and to commercially exploit registered trademarks

28  not owned by, or licensed to, GOOGLE.

8.      A brief explanation of how GOOGLE works and what it does is necessary.  GOOGLE is in the business of providing individuals who are searching on the internet with results for their search queries. As part of its business it sells advertising in the form of Google AdWords.

9.      The invention of the internet did not immediately connect users with what they were looking for as they searched online.  Using the internet involves use by people who want to find something and someone with something wanting to be found. Someone wishing to find something on the internet will type in the word or phrase they are looking for in the search engine that they are using, such as AOL, Google, Yahoo, or Bing.

10.     In order to be found on the internet, one must design a "website."  This is a virtual storefront, where potential customers can come, look and see, what product, goods or services you have for sale.

11.     GOOGLE 'Indexes" or crawls your site collects information regarding its contents.  GOOGLE stores the information, and when a query is made by a user, it will rank the pages of your website for various factors and will return results to the search query in the form of SERPs (Search Engine Results Pages).

12.     Page traffic is generated in two basic ways.  1) Organic traffic and 2) Pay Per Click Advertising.  A web site is constructed for Search Engine Optimization using several different factors.  A good website will be constructed first around keywords.  Before building a website, a designer or webmaster will first do a "Keyword" search using various different tools such as Google Keyword Search, Nichebot, Adword Digger, or some other tool.   The goal of keyword research is to find out what keywords, terms or phrases that people are searching for.

13.     A webmaster will then build a website using computer code with HTML, Java Script, CSS.  The content of the website is built around the keyword, and the rank of the website in the search results is based on keyword density, relevance, authority and value in a formula known only to GOOGLE and their engineers.

14.     The second way is to advertise using the search's engine's manipulation of searches using specific keywords or phrases.  GOOGLE by bidding on AdWords, Publish an Ad, and then by driving a traffic to a particular website.  An internet marketer can identify particular keywords or phrases, construct an ad using those keywords, and then pay the search engine provider a fee for

advertising or bidding on those particular keywords.  For example, if you owned a wedding favor site, you could find out what keywords people are looking for, such as wedding party favors, summer wedding favors, and so on, and then bid on those keywords against others for the right to rank highly on GOOGLE against competitors.  The higher the bid, the higher your ranking for your web site in the SERPs, and the more traffic or views that your website will generate.  This is also called "pay per click" advertising.

15.     The program that GOOGLE has is called GOOGLE AdWords, or simply, "AdWords." Since GOOGLE is the dominate search engine on the internet, it is vital for any internet marketer to understand how GOOGLE AdWords work.

16.     A individual wishing to rank high in the GOOGLE results would create a GOOGLE AdWords account.

17.     Next, he would conduct a search using the GOOGLE AdWords keyword suggestion tool.

18.     Then the advertiser would decide on what keywords to bid, and construct an ad campaign using those keywords.

19.     The problem arises in this case because of GOOGLE'S, and plaintiff's competitors unauthorized use of a trademarked name as a generic "keyword"

20.     GOOGLE's search engine spiders picked up plaintiff's trademarked names "STYROTRIM."

21.     It then in-putted those terms into its keyword suggestion tool, and allowed plaintiff's competitors to bid on those particular keywords in building an ad campaign and then by generating traffic as a result.

22.     By doing so, GOOGLE misappropriated the trademarked names for its own use, generated advertising revenue from plaintiffs' competitors, and facilitated plaintiffs competitors in infringing on plaintiff's trademarks.  Not only have plaintiffs competitors been successful in bidding on plaintiff's trademarked "keywords" it has facilitated the dilution of plaintiff's customer base and diverted customers and traffic that rightfully is plaintiffs, and plaintiffs alone.

23.     Specifically, GOOGLE enters into contracts with entities and individuals whereby  said parties purchase the right to use the trademarks of their competitors in such a way that when a customer or potential customer inputs that trademark into GOOGLE's search engine in an attempt

1   to find the website of the goods and services associated with that trademark, the website of the
2   competitor to the trademark holder appears in GOOGLE's published search results, and often in a
3   position superior to that of the trademark holder.

4   24.    A mark, or the marks, sold in this fashion by GOOGLE will hereinafter be referred to as a
5   "Keyword," or "Keywords."

6   25.    GOOGLE charges a fee for each visit ("pay per click") is paid handsomely for this
7   arrangement.  By using the pay per click method, to the unsophisticated user, the pay per click ads
8   can have a higher rank on the SERP, thereby giving the appearance to the search engine user that the
9   competitor's website, goods and services are preferable to that of the trademark holder, despite the
10  user's intention to search for a particular keyword or phrase.  The traffic or results are in essence
11  being misdirected or diverted.  In a sense, it's a form of bait and switch advertising.  Despite a query
12  for a particular trademarked word into the search engine that he or she wants information regarding
13  the goods and services branded by the trademark,  GOOGLE diverts customers and potential
14  customers away from the websites of the trademark holder to its competitors and being paid by the
15  competitors for this sleight of hand.

16  26.     Plaintiff now brings this lawsuit to hold GOOGLE accountable for selling  to Plaintiff's
17  competitors rights held exclusively by Plaintiff, including without limitation the right to use
18  Plaintiff's mark in commerce and/or in connection with marketing, advertising, and sales.

19  27.    Plaintiff is a company engaged in the business of marketing and selling its unique and
20  proprietary "Styrotrim" building material to homeowners, contractors, and those in the construction
21  and remodeling industries. Plaintiff has been very successful with its "Styrotrim" product, enjoying
22  substantial sales, and building strong goodwill and brand awareness. Plaintiff has expended
23  considerable resources on marketing his mark, brand, and products, including without limitation,
24  buying advertising time on television stations, and advertising over the Internet. The product became
25  so well-known that it was featured on Home and Garden television network  programming, and in
26  other media outlets.

27  28.    Plaintiff spends a large amount of time and money each year to advertise and market its
28  "Styrotrim" mark and the product bearing same. Through this advertising and market, and a superior

and unique product, Plaintiff has become well known and famous in his market and has acquired a reputation for excellence.

29.     Plaintiff's "Styrotrim" trademark is a unique and valuable business asset, and one which Plaintiff strongly polices and protects. The "Styrotrim" mark has become distinctive and famous and serves to distinguish Plaintiff's reputation, goods and services from his competition. The market in which Plaintiff operates associates the "Styrotrim" mark with Plaintiff and Plaintiff only, and his exclusive control of this mark provides a benefit in that potential customers will use the "Styrotrim" mark to search through internet engines such as GOOGLE's to find Plaintiff's products and web presence.

30.     GOOGLE operates an internet search engine and markets and sells advertising tied to its search engine. A large portion of GOOGLE's revenues are derived from GOOGLE's "AdWords" program (hereinafter "AdWords"). Through this program, GOOGLE auctions or otherwise sells words and terms, including without limitation Keywords, to parties that wish to advertise to GOOGLE search engine users that input those words or terms while searching the internet. The highest bidder for a search term has its website address listed as a clickable link under the title "Sponsored Links" either above or to the right of the other website address links.

31.     Clicking on these links brings the user to the website of the company who purchased use of the Keyword and was listed as a "Sponsored Link." As each user clicks the "Sponsored Links" set forth on GOOGLE's published results page, which are represented to the user to be listed by relevance to the user's search, GOOGLE earns and realizes revenues.

32.     GOOGLE uses a propriety code or algorithm to determine what results to publish after a use inputs search terms, and what order in which to publish those results. It is generally understood that the higher a listing is published on the GOOGLE search results page, the more likely the user is to "click through" to that listing and view the page and purchase goods or services. In fact, Plaintiff alleges on information and belief that there exists a whole industry that purports to be able to manipulate GOOGLE's code or algorithm to ensure that a company's listing appears higher in GOOGLE's published search results.

33.     On information and belief Plaintiff alleges that GOOGLE represents to its users and the

public that the higher a result is listed on the search results page, the more relevant it is to the party searching. Many of the "Sponsored Links" appear at the very top of the list of published search results, indicating to the consumer that said links are the ones most relevant to the terms searched, and the needs and interests of the user.

34.     The "Sponsored Links" are not clearly marked as advertisements and/or as "paid-for placements," and are depicted in such a way as to confuse the user as to  the reasons why the "Sponsored Links" have appeared as a result of the user's search  for the goods and services identified by the trademarked term input by the user.

35.     Plaintiff operates a website at www.styrotrim.com. This website is one  of Plaintiff's primary sources of advertising and sales. Many users search for Plaintiff's website and products through internet search engines such as GOOGLE's search engine. This website, and the "Styrotrim" mark, are well-known and oft- searched for on internet search engines. The trademark "Styrotrim," and the www.styrotrim.com  domain name, were submitted to GOOGLE by Plaintiff to ensure that if such terms were searched by a user, the search results published by GOOGLE would list as the lead link the link for Plaintiff's website. Clicking on this link would lead the user to Plaintiff's website.

36.     Plaintiff owns the federal registration in and to the "Styrotrim" mark.  Plaintiff applied for the registration for the mark on August 8, 2005, and the registration was granted on July 25, 2006. Plaintiff has also applied for and  received a design mark for Styrotrim. At no time has Plaintiff licensed or otherwise  granted any rights in these marks to GOOGLE, aside from GOOGLE being able to use the marks to locate and/or identify Plaintiff's website.

37.     Plaintiff is informed and believes and thereon alleges that GOOGLE sold  certain rights to Plaintiff's "Styrotrim" mark to Plaintiff's competitors, and others, in the same or similar industries and/or markets.  GOOGLE has improperly infringed upon and diluted Plaintiff's name and trademark  "Styrotrim" by selling the trademark "Styrotrim" to Plaintiff's competitors as a Keyword so that when an user of GOOGLE's search engine searches for "Styrotrim," the competitor's advertisement hyperlink will appear on the first page of the search results.

38.     In many cases, the link to the competitor's website will appear higher and more conspicuously than the link for Plaintiff's website.  This enables  GOOGLE and  Plaintiff's

competitors to exploit Plaintiff's trademarks in such a way so as to place their advertising hyperlinks in front of consumers who specifically search for "Styrotrim," thereby diverting a percentage of such customers away from Plaintiff's website. In addition, Plaintiff's competitors benefit from all of the goodwill, initial interest, and "buyer's momentum" associated with Plaintiff's valuable trademark, and at a fraction of the cost. Attached as Exhibit A is a true and correct screen shot taken on May 28, 2009 of the search results published by GOOGLE when a GOOGLE search engine user searches for "Styrotrim." As is evident from said search results, the links to the websites of Plaintiff's competitors, none of which have any connection to Plaintiff or the "Styrotrim" mark, appear above and in combination with Plaintiff's links in GOOGLE's published results.

39.     In searching for Plaintiff's products and web presence by entering "Styrotrim" as a search term into GOOGLE's interne search engine, a user is indicating that he or she is interested in Plaintiff and its products, and making purchases of Plaintiff's products.

40.     GOOGLE exploits for profit its knowledge of this interest by selling contextual advertising space to competitors in the market that services users with this interest. This type of advertising space allows companies with similar, related, and/or competing goods and services to those being searched for to have links advertising said goods and services appear on the same page of results on which the Keyword results appear. This implies to the search engine user a sponsorship, endorsement and connection between the product identified by the Keyword, and the third party companies' goods and services. It also allows third parties to free-ride off of the reputation and good will associated with the term that is input into the search engine. This sort of advertising is advantageous because it targets a specific market that has already exhibited an interest, through the input of the Keyword, in the type of goods and services offered by the third party.

41.     GOOGLE thereby profits financially from infringing upon and diluting Plaintiff's protected trademarks and assisting and encouraging third parties to do so as well.

42.     Upon information and belief, GOOGLE also employs software or other programming known as a "Keyword Suggestion Tool." This tool suggests to Plaintiff's competitors that they should use Plaintiff's "Styrotrim" trademark as a Keyword for their advertising and to maximize their sales. GOOGLE's use of this tool is designed to make such competitors' advertising more successful, and

to lead more users to bypass the link to Plaintiffs website and click on the competitors' links. The more times said links are clicked by the user, the more profits are realized by GOOGLE. In essence, by intercepting and diverting Plaintiffs customers and potential customers to websites owned by Plaintiffs competitors, GOOGLE is realizing revenues.

43. Upon information and belief Plaintiff alleges that it is GOOGLE's policy to sell the rights to use marks such as Plaintiffs to Plaintiffs competitors in order to increase revenues, and such sales are uses in commerce as defined in the Lanham Act; and it is also GOOGLE's policy not to investigate complaints about GOOGLE's policies and practices to the extent they are based on trademark infringement.

44. Plaintiff has provided written notice to GOOGLE of his allegations that GOOGLE has violated his trademark rights. No remedial action was taken by GOOGLE.

45. Upon information and belief, Plaintiff alleges that GOOGLE sells the right to use Plaintiffs "Styrotrim" trademark to third parties without the consent of Plaintiff. GOOGLE sells this use of Plaintiffs "Styrotrim" trademark to third parties in connection with advertising that GOOGLE hosts on its websites, and from which it profits. In doing so, GOOGLE, in concert with these third parties, exploits Plaintiffs "Styrotrim" mark to divert customers and potential customers of Plaintiffs to websites hosted by, and offering the competing products and services of, these third parties.

46. Upon information and belief, Plaintiff alleges that in committing the acts alleged in the preceding paragraph, GOOGLE contravenes fair business practices by intercepting and diverting customers and Plaintiffs that were rightly those of Plaintiff and had entered Plaintiffs marks into GOOGLE's search engine; by trading on the goodwill, brand awareness and business reputation of Plaintiff; by diluting the value of Plaintiffs marks by associating them with companies and products of a different and inferior nature; by creating a false sense of sponsorship, affiliation, or connection, between Plaintiff and the goods and services of third parties; by indicating to consumers that the goods and services of those third parties that appear on the search results page that is published after the entry of Plaintiffs marks are as credible, quality, and trustworthy as Plaintiffs, and qualify as acceptable substitutes for Plaintiffs goods and services; by profiting from the use of Plaintiffs marks without compensation to, or the authorization of, Plaintiff; and by negating the value of Plaintiffs

own online advertising campaign by allowing itself and third parties to benefit and profit when users search for the marks advertised, marketed and developed by Plaintiff.

47. Upon information and belief, Plaintiff alleges that GOOGLE's use of Plaintiffs marks to identify and direct consumers to the goods and services of others causes significant confusion in the marketplace, dilutes the value of Plaintiffs marks, implies a false sponsorship and association between Plaintiff and his competitors, allows Plaintiff's competitors to free-ride on and benefit from the goodwill and reputation of Plaintiff, and denies Plaintiff the ability to control his marks, and the goods and services with which they are associated.

48. Upon information and belief, when GOOGLE presents a user that searched through GOOGLE's search engine for Plaintiffs mark with published results that conspicuously display "Sponsored Links" containing links of Plaintiffs competitors, the user will often times bypass Plaintiffs link and instead go to the websites of Plaintiff's competitors, or attempt another search that does not seek information regarding Plaintiff's website or goods. This damages Plaintiff, and does so even if the user eventually realizes that the website is not Plaintiffs, and is not associated with Plaintiff.

49. Upon information and belief Plaintiff alleges that GOOGLE is and was aware that its actions as described herein constitute trademark infringement and unfair business practices. As such, its actions were and are deliberate and willful, and were and are taken with full knowledge that they constitute a violation of the law. GOOGLE knowingly exploited and traded on the goodwill of trademarks in which it had no ownership rights for the Said conduct was undertaken by GOOGLE for the sole purpose of increasing its own profits. This constitutes willful infringement.

50. Internet users that search through GOOGLE's search engine for any of Plaintiff's marks, or for any of Plaintiff's marks in combination with other terms, are deceived into believing that the "Sponsored Links" of plaintiff's competitors that appear on GOOGLE's published results list are related to Plaintiff by their placement on the results page, their appearance and similarity to the results, the good and services they offer, and/or their content. There is no indication whatsoever on the results page to communicate to the user that the "Sponsored Links" are not sponsored by Plaintiff or otherwise bear a relationship to Plaintiff, and are in fact

paid advertisements by Plaintiff's competitors.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE LANHAM ACT -15 USC § 1114 (1)**

51.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 50 as though more fully set forth herein.

52.    Plaintiff owns the United States Trademark Registration for the word mark "STYROTRIM." He also owns a design mark registration bearing the same word.

53.    Upon information and belief Plaintiff alleges that GOOGLE has violated plaintiff's exclusive rights to the name and trademark "Styrotrim," and contributed to the violation of such rights by others, by using and suggesting and encouraging the use by its AdWords advertisers of the trademark "Styrotrim" as a Keyword for purposes advertising and selling the goods and services of Plaintiff's competitors through GOOGLE's AdWords advertising system, and the publishing by GOOGLE of

54.    "Sponsored Links," including Plaintiff's competitors links, in response to a search for "Styrotrim" by a user of GOOGLE's search engine.

55.     GOOGLE's use of Plaintiff's trademark "Styrotrim" constitutes a use in commerce in connection with the sale, offering for sale, distribution and advertising of goods and services. GOOGLE's sales of rights to exploit Plaintiff's "Styrotrim" trademark, and the branding of certain GOOGLE searches with the "Styrotrim" trademark, also constitutes use in commerce.

56.    The goods and services offered by one or more of Plaintiff's competitors which participated in GOOGLE's AdWords campaign by using the trademark "Styrotrim" as a Keyword are substantially similar to the goods and services offered by Plaintiff under the "Styrotrim" mark.

57.    Upon information and belief, GOOGLE's use of Plaintiff's trademark causes at least some consumers actively seeking to find and do business with Plaintiff to click on one or more "Sponsored Links" linking to the websites of Plaintiff's competitors, either by mistake, or through confusion or because they are deceived into believing such "Sponsored Links" are related to Plaintiff; and, further, causes some users to abandon their attempts to locate Plaintiff's website.

58.    Upon information and belief, GOOGLE's use of Plaintiff's name and trademark causes at least initial confusion among users of GOOGLE's search engines who see competitors' "Sponsored

-11-

Links" published by GOOGLE in response to a search by the user for Plaintiff's marks.

59.     Upon information and belief, there is an expectation among internet users who conduct searches on GOOGLE's search engine that the results published by GOOGLE in response to the search, including the "Sponsored Links," will be related to the search term, especially with regard to "Sponsored Links" that appear immediately above the published results of the search, and are designed to look similar to the other search results published by GOOGLE in response to a search.

60.     Plaintiff expends significant sums of money in advertising its brand and trademark both on the internet and on television. As a result, the name the mark "Styrotrim" has become well-known, famous and distinctive in its market among contractors, homeowners, and those in the construction and remodeling industries.

61.     GOOGLE is promoting, encouraging, enabling and profiting from Plaintiff's competitors "free-riding" on Plaintiff's goodwill and the name recognition it enjoys in its marketplace and among its customers.

62.     Upon information and belief, some users who search for Plaintiff's marks on GOOGLE's search engines by inputting the terms "Styrotrim" or "www.styrotrim.com," thereafter click upon a competitor's link by mistake, or out of confusion or because they are deceived into believing it is related to the search terms set forth above, and thereafter do not continue their search for Plaintiff either because they do business with a competitor, or out of discouragement or because they are diverted and distracted from continuing their search.

63.     Upon information and belief, after being diverted from their search for Plaintiff, some users lose the initial "momentum' generated by the goodwill associated with the "Styrotrim" brand, or are otherwise presented with purchasing barriers associated with making a choice between competing providers of goods and services, and causes Plaintiff to lose one of the key benefits of its well-known trademark.

64.     By reason of the above, GOOGLE has violated the exclusive rights of Plaintiff in and to its use of the registered trademark "Styrotrim" and has contributed to the violation of such rights by others by enabling, cooperating with, suggesting and encouraging the use of Plaintiff's trademark by others, and may be held liable in a civil action under 15 U.S.C. § 1114 (1).

65.     GOOGLE has refused written notice of Plaintiff's claim and has refused to take remedial measures and refused to alter its policy permitting companies other than Plaintiff, including Plaintiff's competitors, from using the "Styrotrim" trademark to direct consumers to "Sponsored Links" which include Plaintiff's competitors; therefore its violation of plaintiff's trademark rights under the Lanham Act is a willful and intentional violation of Plaintiffs exclusive rights.

66.     Upon information and belief, GOOGLE used and encouraged third parties to use the name and trademark "Styrotrim" with the intention of benefitting from the goodwill associated with Plaintiff's trademark in that such use was intended to cause confusion, mistake or to deceive potential customers, or to divert customers from Plaintiff to third parties, or otherwise improperly benefit from the goodwill associated with plaintiff's mark.

67.     Upon information and belief, GOOGLE has altered its policy of regarding trademark violations through its search engine and its AdWords advertising program for the purpose of profiting from the sale of such additional trademarked search terms and the advertising benefit it provides to Plaintiff's competitors. This change in policy was made with the intent of increasing GOOGLE's advertising revenues.

68.     By reason of the above, GOOGLE is in violation of 15 U.S.C. § 1114 (1) and Plaintiff is entitled to recover profits and damages from defendant.

69.     Plaintiff has been damaged by defendant's violations of its rights under the Lanham Act in an amount to be determined at trial.

70.     As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**FALSE DESIGNATION OF ORIGIN - 15 U.S.C. § 1125 (a)**

71.     Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

72.     GOOGLE's sale of the right to use Plaintiff's registered trademark "Styrotrim" to competitors of Plaintiff in order for said competitors to use the term to drive customers to their websites constitutes a use in commerce.

-13-

73.   Internet users who search using the term "Styrotrim" on GOOGLE's search engine have a reasonable expectation that the websites and hyperlinks appearing on GOOGLE's published list of search results are sponsored by or related to Plaintiff.

74.   Internet users who view the "Sponsored Links" on GOOGLE's published list of results, some or all of which appear to be part of the published search results, may become confused, mistaken, misled and/or deceived that "Sponsored Links" which link to Plaintiff's competitor's websites may be affiliated with, connected to, or approved or sponsored by Plaintiff.

75.   GOOGLE's publishing of the "Sponsored Links" in response to a search by an user using the trademark "Styrotrim" as one or more of the search terms constitutes a false designation of origin, affiliation, connection or association of such competitor with Plaintiff, or a false description of origin, sponsorship or approval of the goods or services or activities of such competitor by Plaintiff, and a contribution to the false designations by others by enabling, cooperating with, suggesting and encouraging the use of Plaintiff's trademark by others. Such conduct also constitutes false advertising.

76.   As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

Wherefore plaintiff prays for judgment as set forth herein.

**THIRD CLAIM FOR RELIEF**
**(DILUTION OF PLAINTIFF'S TRADEMARK -15 U.S.C. § 1125 ©))**

77.   Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

78.   Plaintiff's mark "Styrotrim" is a distinctive and famous mark under 15 U.S.C. § 1125 for the following reasons:

A.     "Styrotrim" is a distinctive unique word which is not merely descriptive;

B.     "Styrotrim" is used extensively in connection with television and internet advertising for Plaintiff's goods and services;

C.     "Styrotrim" is recognized widely, particularly among Plaintiff's

-14-

1  market of homeowners, contractors, construction workers and remodelers.

2  D.  No other party uses a mark similar to Plaintiff's mark for similar

3  services;

4  E.  "Styrotrim" has been federally registered by plaintiff as a

5  trademark.

6  79.  GOOGLE's sale to competitors of Plaintiff the use of the trademark "Styrotrim" as a search

7  term that, when input by a user, will trigger the publishing of "Sponsored Links" including the

8  competitor is a commercial use in commerce because defendant is a commercial entity selling and

9  offering for sale advertising on its search engine located on the internet at www.GOOGLE.com.

10  80.  Upon information and belief, GOOGLE's use of the trademark "Styrotrim" for commercial

11  use in commerce occurred after Plaintiff's trademark "Styrotrim" became famous or distinctive.

12  81.  Defendants' use of the trademark "Styrotrim" dilutes the distinctive quality of Plaintiff's

13  trademarks as it causes and can cause confusion among customers and potential customers of

14  Plaintiff.  In  addition,  customers  and  potential  customers  may  view  competitor's

15  advertisements/Sponsored Links in response to a search for "Styrotrim" on GOOGLE's search engine

16  and reasonably believe that the advertising company, often a competitor of Plaintiff, is affiliated or

17  associated with, or approved by or sponsored by Plaintiff.

18  82.  GOOGLE's use of Plaintiff's trademarks causes a "blurring" of the trademark's relationship

19  to Plaintiff. It also may lead to consumers viewing Plaintiff's name and trademarks as a generic term

20  referring to home improvement.

21  83.  Finally, customers or potential customers and potential customers may view competitor's

22  websites after clicking on the "Sponsored Links" published by GOOGLE, and be dissatisfied with

23  the level of quality of services provided by such competitor, thereby tarnishing the "Styrotrim" mark

24  and name in the mind of the consumer.

25  84.  GOOGLE's use of Plaintiff's trademarks therefore constitutes a dilution of same, or a

26  contribution to the acts of dilution of such trademark by others by suggesting and encouraging the

27  use of such trademarks.

28  85.  Plaintiff has incurred and may incur damages related to lost or diverted customers and

potential business, and the decline in the value and goodwill of its marks. In addition, if a potential customer is misdirected by GOOGLE's published results to a competitor's business, believing a relationship exists between this competitor and Plaintiff, or that the quality of such competitor's goods and services are indicative of the quality of Plaintiff's goods and services, or because of a perception that Plaintiff is not controlling the use of its trademark for the exclusive use of his company, and that Plaintiff's marks are diluted and/or tarnished by Defendant's use of identical marks as a means of advertising such competing businesses, Plaintiff will be greatly harmed.

86.     Upon information and belief, Plaintiff alleges that GOOGLE was aware of Plaintiff's use of the trademark "Styrotrim," and its own lack of rights to use or sell rights in that mark, and willfully intended to trade upon Plaintiff's reputation or to cause dilution of Plaintiff's trademark, or to contribute to such dilution by others. At the very least, GOOGLE's actions were willful after it refused to remove such competing Sponsored Links and refusing to remove Sytrotrim's name from its list of suggested search terms via its Keyword Suggestion Tool program.

87.     As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
## COMMON LAW TRADEMARK VIOLATION

88.     Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

89.     GOOGLE's use of Plaintiff's trademark "Styrotrim" for the commercial purpose of selling it in return for advertising revenue, and for the purpose of advertising the goods and services of those in competition with Plaintiff, and not for the purpose of referring to Plaintiff and its goods and services, and without the permission of Plaintiff, is an infringement of Plaintiff's common law trademark rights.

90.     GOOGLE's use of the "Styrotrim" name and trademark allows defendant to freely trade off of and benefit from the goodwill and reputation associated with Plaintiff's name and trademark "Styrotrim" without consequent expense to itself, to its advertisers, or compensation to Plaintiff.

91.     GOOGLE's use of the "Styrotrim" name and trademark is deceptive and is likely to cause

confusion or mistake in the minds of potential customers and potential franchisees who search for "Styrotrim" on GOOGLE's search engine, and is therefore a violation of Plaintiff's common law trademark rights and a contribution to the violation of such rights by others by encouraging, suggesting and enabling them to do so.

92.     As a result, Plaintiff has suffered damages in an amount to be determined at trial.

93.     As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

       Wherefore, plaintiff prays for judgment as set forth herein.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS AND**
**PROSPECTIVE ECONOMIC ADVANTAGE**

94.    Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

95.     Upon information and belief, potential customers of Plaintiff use the internet to find information on Plaintiff and his goods and services.

96.    Upon information and belief, potential customers of Plaintiff are individuals and businesses who own computers and computer systems, and typically use the internet to find information on Plaintiff and other providers of goods and services.

97.    Potential customers of Plaintiff are likely to attempt to find information on Plaintiff, or look for Plaintiff's website, prior to doing business with Plaintiff. Plaintiff's website contains substantive and extensive information regarding Plaintiff's goods and services, and is a major source of Plaintiff's business.

98.    Potential customers may also purchase goods and services through Plaintiff's website.

99.    Drawing interested parties to Plaintiff's website is a key aspect of Plaintiff's marketing and sales strategy, as is developing trust, quality and value.

100.    Upon information and belief, GOOGLE was aware that Plaintiff attempts to do business through his website and seeks to attract customers as part of his sales and marketing strategy. GOOGLE was so aware because, inter alia, Plaintiff is an AdWords advertising partner with GOOGLE and spends a significant sum of money each month with GOOGLE to advertise its

websites through GOOGLE's search engine.

101.     Upon information and belief Plaintiff alleges that GOOGLE was therefore aware that Plaintiff had a reasonable expectation of obtaining new business, new customers and further future economic advantage through attracting individuals and businesses to its websites as a result of searches on GOOGLE's search engine  containing the word "Styrotrim."

102.     Upon information and belief, a percentage of GOOGLE's search engine users who performed searches on defendant GOOGLE's search engine using the protected trademark "Styrotrim" were diverted from their clear attempt to locate Plaintiff to competitors who had purchased Keywords in order to appear as one of the "Sponsored Links" which appeared on the results page published by GOOGLE following a search for "Styrotrim."

103.     Upon information and belief, Plaintiff would have realized additional sales and customers and revenue from such diverted interne users were it not for GOOGLE's intentional and improper sale of Plaintiffs protected trademark "Styrotrim" as a search term used to generate competing "Sponsored Links," and GOOGLE's affirmative suggestions and encouragement for competitors to use "Styrotrim" for such purposes through its Keyword Suggestion Tool.

104.     Such use and encouragement of others to use Plaintiff's protected trademark as a search term to generate its inclusion in the publishing by GOOGLE of the "Sponsored Links" allows both GOOGLE and others to benefit and profit from the goodwill and notoriety of plaintiff's trademark without the expense, time, effort and years of quality service which Plaintiff has invested into its business reputation and its trademark, and is therefore a violation of trademark laws, unfair competition, "free-riding" and is otherwise improper.

105.     GOOGLE has intentionally and improperly interfered with Plaintiff's prospective economic advantage by diverting customers actively seeking to find  Plaintiff through GOOGLE's search engine.

106.     GOOGLE has refused to cease and desist from such improper use of Plaintiff's trademarks, despite a written demand for same.

107.     As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

108.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 as though more fully set forth herein.

109.     Upon information and belief, GOOGLE knew or should have known that Plaintiff did business

through his website, seeking to attract customers as part of his sales and marketing strategy. GOOGLE was so aware because, inter alia, Plaintiff is an AdWords advertising partner with GOOGLE and spends a significant sum of money each month with GOOGLE to advertise its websites through GOOGLE's search engine.

110.     GOOGLE was therefore aware that was conducting business on the internet and had a reasonable expectation of obtaining new business, new customers and further future economic advantage through attracting individuals and businesses to his websites as a result of searches on GOOGLE's search engine  containing the word "Styrotrim."

111.     Upon information and belief, a percentage of GOOGLE's search engine users who performed searches on defendant GOOGLE's search engine using the protected trademark "Styrotrim" were diverted from their clear attempt to locate Plaintiff to competitors who had purchased Keywords in order to appear as one of the "Sponsored Links" which appeared on the results page published by GOOGLE following a search for "Styrotrim."

112.     Upon information and belief, Plaintiff would have realized additional sales and customers and revenue from such diverted interne users were it not for GOOGLE's intentional and improper sale of Plaintiffs protected trademark "Styrotrim" as a search term used to generate competing "Sponsored Links," and GOOGLE's affirmative suggestions and encouragement for competitors to use "Styrotrim" for such purposes through its Keyword Suggestion Tool.

113.     Such use and encouragement of others to use Plaintiff's protected trademark as a search term to generate its inclusion in the publishing by GOOGLE of the "Sponsored Links" allows both GOOGLE and others to benefit and profit from the goodwill and notoriety of plaintiff's trademark without the expense, time, effort and years of quality service which Plaintiff has invested into its

business reputation and its trademark, and is therefore a violation of trademark laws, unfair competition, "free-riding" and is otherwise improper.

114.    GOOGLE has intentionally and improperly interfered with Plaintiff's prospective economic advantage by diverting customers actively seeking to find Plaintiff through GOOGLE's search engine.

115.    GOOGLE has refused to cease and desist from such improper use of Plaintiff's trademarks, despite a written demand for same.

116.    As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

Wherefore, plaintiff prays for judgment as set forth herein.

**SEVENTH CLAIM FOR RELIEF**
**FRAUD AND DECEIT**

117.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 116 as though more fully set forth herein.

118.    Through application of its Keyword suggestion tool, GOOGLE represented that the trademark "Styrotrim" was a common keyword subject to commercial exploitation.

119.    Said representation was in fact false because the word "STRYROTRIM" is Trademarked and not subject to exploitation in the public domain except by its owner.

120.    As a proximate cause of defendants misrepresentations, plaintiff has suffered damages in the form of loss of traffic, increased costs of advertising, loss of customers, loss of good will, and other damages to his business, all in an amount subject to proof.

121.    Defendants representations and false suggestion of the keyword was willful, intentional and malicious, done for economic gain and to the damage of plaintiffs business, all in an amount subject to proof.

Wherefore, plaintiff prays for judgment as set forth herein.

**EIGHTH CLAIM FOR RELIEF**
**FOR CALIFORNIA UNFAIR COMPETITION AND BUSINESS PRACTICES**

122.    Plaintiff repeats and realleges each and every allegation made above as if set forth in full

herein.

123.     Defendant's wrongful conduct, as alleged above and otherwise, constitutes unfair competition and deceptive practices under California Business & Professional Code  17200, et seq., and 17500, et seq.

124.     Moreover, Defendant's conduct, as set forth above, constitutes unlawful, unfair, and/or fraudulent business practices, and presents a continuing threat to the consuming public in that the public is likely to be deceived as to the affiliation, connection, and association of the "Sponsored Links" published by GOOGLE after a member of the public enters a Keyword into GOOGLE's search engine.

125.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer injury in fact resulting in the loss of money, goodwill and/or property in an amount to be determined at trial.

126.     In addition, Defendants, and each of their, conduct, unless enjoined and restrained has, and will continue to cause irreparable harm to Plaintiff, for which Plaintiff has no adequate remedy at law. In order to restore Plaintiff's interests in monies and property acquired by Defendants, and each of them, by the unfair competition complained of herein, Plaintiff seeks to have Defendants, and each of them, enjoined from unlawfully selling to Plaintiff's competitors, or any other party, the right to use in commerce Plaintiff's "Styrotrim" trademark.

127.     GOOGLE also used, exploited and profited from use of Plaintiff's marks. This use of Plaintiff's marks had value, as GOOGLE received payment by Plaintiff's competitors for the right to use Plaintiff's trademarks in connection with the generation of "Sponsored Links" in GOOGLE's published search results. It did so without the authorization and consent of Plaintiff, and to the detriment of Plaintiff.

128.     This conduct resulted in the unjust enrichment of Plaintiff, and it would be inequitable to allow GOOGLE to retain these ill-gotten gains.

129.     Plaintiff has been generally and specially damages by the above in an  amount to be proven at trial, and has been irreparably harmed.

        Wherefore, plaintiff prays for judgment as set forth herein.

-21-

### NINTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT

130.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 129 as though more fully set forth herein.

131.    Defendant has been unjustly enriched at plaintiff's expense.

132.    An accounting needs to be made of all profits from the unauthorized suggestion and use of plaintiff's trademarked keyword, Styrotrim, and defendants should be forced to disgorge all profits to plaintiff.

Wherefore, plaintiff prays for judgment as set forth herein.

//

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel JURIN respectfully requests that this Court grant judgment against the Defendants on all causes of action as follows:

1.    A preliminary and permanent injunction against defendant GOOGLE, Inc. directing it to discontinue use of the trademark "Styrotrim", or any substantially similar word as a search term or as part of a search term phrase in connection with advertising on its search engine, including without limitation, with its sale of Sponsored Links through its AdWords advertising program;

2. A preliminary and permanent injunction against GOOGLE, Inc. directing it to discontinue the practice of suggesting and encouraging advertisers to use the "Styrotrim" name and trademark as part of their AdWords search terms via GOOGLE's Keyword Suggestion Tool, or by any other means;

3. A preliminary and permanent injunction against defendant GOOGLE, Inc. directing it to suspend all current Sponsored Links which use "Styrotrim" as a search term or part of a search term phrase, other than Plaintiff s Sponsored Links;

4.    An accounting of all revenue earned by GOOGLE, for its own account or through affiliates or agents, and or AdWords users, by selling plaintiff's trademark "Styrotrim" in its AdWords program, or any other advertising program, and an Order to pay such revenue to Plaintiff, or such percentage of revenue as determined by this Court to be just and fair;

1     5. Damages in an amount determined by the Court, up to treble plaintiff's actual damages

2 in a sum to be determined at trial, or alternatively statutory damages of not less than $500.00 per use

3 of plaintiffs mark, as the Court considers just, together with punitive damages as determined by the

4 Court;

5     6. Reasonable attorneys fee as determined by the Court upon application;

6     7. Costs and disbursements incurred by the plaintiff; and

7     8. Such other and further relief as this Court deems just and proper.

8     9. Plaintiff requests a Trial by Jury Pursuant to FED. R. CIV. P. 38 and the 7th Amendment

9 to the United States Constitution.

10 //

11 //

12 //

13 DATED: October 21, 2009              Respectfully submitted,

14                            LAW OFFICES OF PAUL R. BARTLESON

15

16                            By /s/ Paul R. Bartleson

17                            PAUL R. BARTLESON #119273
                                Attorney for Plaintiff, DANIEL JURIN

18

19

20

21

22

23

24

25

26

27

28